**SO ORDERED.**

**SIGNED this 1st day of March, 2012.**



_____
Janice Miller Karlin
United States Bankruptcy Judge
_____

### In the United States Bankruptcy Court
### for the District of Kansas

| | | |
|---|---|---|
| In re, | ) | |
| | ) | |
| Bruce Kevin Williams and | ) | Case No. 09-41548 |
| Candice Sue Williams, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Bruce Kevin Williams and | ) | |
| Candice Sue Williams, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-7059 |
| | ) | |
| BAC Home Loans Servicing, L.P.[1] and | ) | |

---

[1] The Complaint named only one defendant, "BAC Home Loans Servicing, L.P.," but in the body of the Complaint, Plaintiffs indicated "defendant is a wholly owned subsidiary of Bank of America." In reply to BAC Home Loans Servicing, L.P.'s Motion for Summary Judgment, Plaintiffs added the following language in the caption, immediately following BAC: "n/k/a Bank of America, N.A." There has been no motion to change the name of the party-defendant, and no pleading filed by either Defendant has added the language. No one disputes that BAC Home Loans Servicing, L.P. merged with Bank of America. Accordingly I have elected to use the name originally used by Plaintiffs for Defendant —BAC Home Loans Servicing, L.P., without the addition of the new "n/k/a" moniker.

| | |
|---|---|
| **Mortgage Electronic<br>Registration Systems, Inc.,** | )<br>)<br>) |
| Defendant-Intervenor. | )<br>) |

**Memorandum Opinion and Order Granting
Defendants' Motion for Summary Judgment
But Giving Plaintiffs a Limited Opportunity to Amend Complaint**

This case involves an attempt by Plaintiffs, Bruce and Candice Williams, to have the loan they intended to be secured by the first mortgage on their home deemed unsecured and the accompanying mortgage found unenforceable.[2] The only basis articulated in their Complaint for this result is that the note was made in favor of one entity and the mortgage in favor of a different entity. They contend this results in an irrevocable split of the two instruments, making the note unsecured, and the mortgage unenforceable. The Defendants, BAC Home Loans Servicing, L.P. ("BAC") and Mortgage Electronic Registration Systems, Inc. ("MERS"), have jointly moved for summary judgment claiming that no such split ever occurred, and that BAC has authority to enforce the note and the mortgage.

I have jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K).

---

[2] I recently granted summary judgment to the only defendant in a companion case involving the second mortgage on the Debtors' home. *See Williams v BAC Home Loans Servicing, LP*, Case No. 10-7060, issued February 14, 2012.

2

## I. Findings of Fact

On February 24, 2003, Bruce and Candice Williams executed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide") in the amount of $144,000.00. On that same date, they executed a mortgage on their home to secure repayment of the note. The mortgage was executed in favor of MERS, acting "solely as nominee for [Countrywide] and [Countrywide's] successors and assigns." When the note and mortgage were executed by the Williamses, Countrywide was a member of MERS, and it remained a member of MERS during the entire time it was an owner of the note. The mortgage was properly recorded with the Register of Deeds for Douglas County, Kansas.

Countrywide sold the note to BAC, which was also a member of MERS at all times that it owned the note.[3] The note was then sold to Fannie Mae, with BAC retaining possession of the original note as the servicer for Fannie Mae. Fannie Mae, like BAC and Countrywide, was also a member of MERS when it owned the note. BAC was merged into Bank of America, N.A., which took possession of the note and became the servicer for Fannie Mae upon the merger. Bank of America was also a member of MERS at all times it was in possession of the note and acted as servicer of it. Pursuant

---

[3]This fact—that Countrywide sold the note to BAC— was contained in BAC's Statement of Fact ¶ 9, which also stated that "Countrywide then endorsed the Note in blank and transferred possession of the Note to BAC." The Williamses disputed the second portion of this statement of fact—pointing out that the copy of the note attached by BAC as an attachment to their brief shows no endorsement by Countrywide. However, the Williamses did not dispute (by pointing to anything in the record, or making any arguments) the fact that the note was sold to BAC.

3

to their agreements with MERS, Countrywide, BAC, Bank of America and Fannie Mae all appointed MERS to serve as mortgagee on their behalf.

In September, 2009, the Williamses filed a Chapter 7 bankruptcy, which was later converted to Chapter 13 proceeding. The Williamses filed a proof of claim on behalf of Bank of America in the amount of $125,000, indicating that the claim was secured by a mortgage.[4] The Williamses filed this adversary proceeding in November 2010.

In their Complaint, they allege that "Defendant Bank claims interest in the real estate is subject to a first lien arising out of a mortgage in favor of Mortgage Electronic Registration Systems, Inc. in the amount of $125,000."[5] The Williamses further allege that "Mortgage (sic) Registration Systems, Inc. holds the mortgage, but not the promissory note."[6] They then claim that "[t]he interest in the note and mortgage are held by two separate and distinct parties and result in an unsecured debt in favor of [Bank of America] pursuant to K.S.A. 58-2323."[7] As a result of these alleged facts, the Williamses then ask me to find that Bank of America's claim under the note is

---

[4] The Defendants initially claimed as a material fact that Bank of America had itself filed a Proof of Claim. This is one of only two facts the Williamses elected to contest. While they are correct that their lawyer, not Bank of America, actually filed the proof of claim, any dispute over who actually filed the Proof of Claim is immaterial to the issues before me.

[5] Adversary Complaint ¶ 9. There is apparently some typographical error, as this sentence is difficult to understand.

[6] *Id*. at ¶ 11.

[7] *Id*. ¶ 13.

4

unsecured and that the mortgage—held in the name of MERS—should be cancelled when Plaintiffs receive their discharge upon completion of their confirmed plan.[8]

Additional facts will be discussed below, when necessary.

## II. Standard for Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[9] In applying this standard, I view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[10] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[11] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[12]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[13] In attempting to meet that standard, a movant that does not bear the ultimate burden of

---

[8] Debtors' confirmed plan provides that they will pay the Trustee sufficient amounts each month so that the Trustee can, in turn, pay the amounts due on both notes during the pendency of this case.

[9] Fed. R. Civ. P. 56(c). Fed. R. Civ. P. 56(c) is made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7056.

[10] *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 927 (10th Cir. 2004).

[11] *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[12] *Id.* (citing *Anderson,* 477 U.S. at 248).

[13] *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

5

persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[14]

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[15] To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[16]

Finally, summary judgment is not a "disfavored procedural shortcut." But instead is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[17]

## III. Plaintiffs' Complaint does not state a theory entitling them to relief.

Plaintiffs' Complaint states its purpose is "to determine the value of the interest of the Defendant in the residential real estate of the debtor (sic) and determine the

---

[14] *Id.* (citing *Celotex,* 477 U.S. at 325).

[15] *Id.* (citing Fed. R. Civ. P. 56(e)).

[16] *Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 675 (10th Cir. 2002).

[17] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

6

amount of the allowed secured claim of the Defendant."[18] It then alleges that BAC has no interest in the residential real estate, and thus no secured claim, because of how the note and mortgage were originally drawn.

The Defendants contend they are entitled to summary judgment because (1) the mortgage remained tied to the note despite the fact that the mortgage was made in favor of MERS and the note was made in favor of Countrywide, BAC's predecessor, and (2) BAC qualifies as a holder of the note under Kansas law, and thus has the authority to enforce the note and mortgage. The Williamses respond that, under Kansas law, the note and mortgage were split and no longer function together, and that there are factual questions surrounding BAC's status as a holder of the note.

The Williamses essentially raise three arguments in opposition to the motion for summary judgment. First, they claim that K.S.A. 58-2323 in some way requires a finding that the note is unsecured because MERS is not the holder or the owner of the note. This argument is directly tied to the claim they raised in the Complaint—that the note and mortgage have been split, the mortgage is no longer (and never was) enforceable, and the note is no longer secured. Second, they claim that because Fannie Mae is now the beneficial owner of the note, BAC cannot enforce it because it is not a "holder" under Kansas law. Finally, they claim that "an intervening entity" in the merger of Countrywide to Bank of America—Red Oak Merger Corporation—creates

---

[18] Doc. 1. There are actually two debtors in this case. In addition, MERS sought and received permission to intervene without objection, so that is why the Complaint speaks of only one Defendant, but this opinion often refers to "Defendants," plural. *See* Docs.25, 26 and 34.

7

doubt as to the chain of title to this property. The second and third claims were not raised in their Complaint; they were raised for the first time when opposing summary judgment.

      **A.    The note and mortgage have not been irrevocably split.**

The only claim actually raised by the Williamses in their Complaint is that the mortgage was rendered unenforceable, and the note unsecured, the instant the mortgage was issued in favor of MERS and the note was issued in favor of Countrywide. I decided this precise issue over a year ago in *Martinez v. Mortgage Electronic Registration Systems, Inc. (In re Martinez)*.[19] In that case, I concurred with the reasoning of *In re Tucker*,[20] which held that issuing the note in favor of one entity and the mortgage in favor of another did not result in the splitting of the note and mortgage provided there was an agency relationship between the two entities.

The Williamses do not try to distinguish *Martinez* or argue that it was wrongly decided; they simply elect to ignore it. Similarly, they never contest the fact that MERS was acting as an agent for Countrywide, BAC, Bank of America or Fannie Mae at all times relevant to this case. Instead, they rely on K.S.A. 58-2323 to support their argument that a fatal splitting of the note and mortgage occurred. K.S.A. 58-2323 provides that "[t]he assignment of any mortgage as herein provided shall carry with it the debt thereby secured." The Williamses claim that "assignment" of the mortgage

---

[19] 444 B.R. 192 (Bankr. D. Kan. 2011).

[20] 441 B.R. 638, 643-44 (Bankr. W.D. Mo. 2010).

8

to MERS "carries with it" the debt secured by the mortgage.[21] Advancing that argument, they then claim that because MERS does not claim to own the note, whoever does own the note "holds it as a general unsecured creditor to be paid pro rata in the main case along with other general unsecured creditors."

The Williamses' legal argument is difficult to follow, but appears to ignore longstanding Kansas common law that holds that the transfer of a debt secured by the mortgage also carries with it the mortgage securing the debt.[22] Contrary to what the Williamses appear to argue, the common law proposition that an assignment of a note carries with it the mortgage that was intended to secure the note and the statutory provision that the assignment of a mortgage carries with it the note secured by the mortgage are not necessarily at odds with each other. In fact, both of these principles are taken directly from the Restatement (Third) of Property (Mortgages) § 5.4. Taken together, they recognize "that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same person."[23]

---

[21] It also appears that the mortgage was never "assigned" to MERS, but was made directly to it, as agent for the beneficial owner of the note, at the inception of the loan. Thus, the "assignment" language in the statute does not even appear to apply to these facts.

[22] *See Bank Western v. Henderson*, 255 Kan. 343, 354 (1994) and *Army Nat. Bank v. Equity Developers, Inc.*, 245 Kan. 3, 17 (1989) (holding that "[o]ur view is that the mortgage follows the note."). *See also Kurtz v. Sponable*, 6 Kan. 395, 396 (1870) ("Under our laws, the mortgage is but appurtenant to the debt, a mere security; and, under ordinary circumstances, whoever owns the debt owns the mortgage."). I note that K.S.A. 58-2323 has been in the Kansas statutes since 1899, well before the *Bank Western v. Henderson* and *Army Nat. Bank v. Equity Developers, Inc.* decisions were decided by the Kansas Supreme Court.

[23] Restatement (Third) of Property (Mortgages) § 5.4, Comment (a).

9

I relied on the same section of the restatement in my prior analysis in *Martinez* when I held that because MERS was only holding the mortgage as an agent for the lender, there was no splitting of the note and mortgage. I do not find that K.S.A. 58-2323 requires a different result than I reached in *Martinez*.

**B.    I decline to decide theories that have not been raised in the Complaint.**

The Williamses' second argument in response to the summary judgment motion is that Fannie Mae now owns the note—again, an argument raised for the first time in their summary judgment response.[24] I have previously ruled that the fact that an entity is not the beneficial owner of the note is immaterial to its ability to enforce the note if that entity is a "holder" of the note under Kansas law.[25] But in this case, I elect not to proceed down this path, because 1) this is not a theory asserted in the Complaint, and 2) even if BAC is not a holder of the note, the Williamses are not entitled to the relief they seek at this time and against these parties.

The Williamses seek a judgment finding that *no one* has a secured claim against their home. But they admit that Fannie Mae, which is not a party to this proceeding, is the owner of the note. Given my decision that there has not been a "split" in the note

---

[24] The Complaint has been on file since November 3, 2010. The final Pretrial Conference was first scheduled for June 24, 2011, then continued to December 15, 2011 after MERS intervened, then again to January 31, 2012 and now to March 14, 2012. At no time have Plaintiffs sought leave to amend the Complaint to assert these, or any other, theories.

[25] *See Martinez v. Mortg. Elec. Registration Sys., Inc. (In re Martinez)*, 455 B.R. 755, 763 (Bankr. D. Kan. 2011). *See also In re Hwang*, 396 B.R. 757 (Bankr. C. D. Cal. 2008), *overruled on other grounds* 438 B.R. 661 (C.D. Cal. 2010) (holding that party who was still in possession of original mortgage note made payable to that party was entitled to enforce the mortgage note despite the fact the beneficial interest in the note had been sold to a third party).

10

and mortgage, even if BAC is not the holder,[26] Fannie Mae is the owner and it can enforce the note, which is secured by the mortgage. Although there may be questions as to whether BAC also has the ability to enforce the note as a secured debt, there is no dispute that Fannie Mae can do so.

Similarly, the Williamses' third argument in response to the summary judgment motion is to allege that the existence of "an intervening entity" in the merger of Countrywide to Bank of America—Red Oak Merger Corporation—creates doubt as to the chain of title to this property. Again, this issue cannot be found in the Williamses' Complaint. They claim that

> "the merger of Countrywide Financial Corporation to Bank of America, had an intervening entity in the merger, Red Oak Merger Corporation, which was at least disclosed to the U.S. Securities and Exchange Commission. However, the Defendants see no defect in this missing link of ownership, despite their claim that a third party, Fannie Mae now owns the Note."

They then argue that Defendants have failed to demonstrate "an unbroken chain of transfer of the Note of February 24, 2003 . . . from Countrywide Home Loans, Inc. to Bank of America, N.A."

Defendants claim that the Williamses have not created a genuine issue of material fact by merely questioning, without more, Red Oak Merger Corporation's involvement in the merger of Countrywide and Bank of America. The Williamses

---

[26] Plaintiffs correctly argue that the copy of the note attached to the original affidavit of Bank of America's Mortgage Servicing Unit Manager, who professed to have personal knowledge of the facts, contains no endorsement, in blank or otherwise. Defendants, in their reply brief, now attach a copy that does contain an endorsement in blank, contending this copy was not originally attached through "inadvertence."

11

provide absolutely no factual or legal analysis as to how the existence of Red Oak is material or relevant to the handling of the Williamses' note and mortgage. They do not address whether Countrywide owned the note at the time of the merger. Similarly, they do not claim that the note was ever transferred to Red Oak as a holder, servicer, or owner of the note, or that Red Oak ever had any involvement, whatsoever, with the note. Instead, the Williamses simply throw this argument "against the wall," hoping I may find that enough of it sticks to survive a motion for summary judgment.[27] I do not so find, but elect to not further consider this issue because it was not raised in the Complaint, and the Williamses have failed to develop the argument in any fashion.

The Williamses have failed to show how Red Oak Merger Corporation's potential involvement in the merger of Countrywide into Bank of America creates a question of fact that is material to their loan.[28] The Williamses never dispute that the note is currently owned by Fannie Mae or that the mortgage remains with MERS as an agent of Fannie Mae. Accordingly, I decline to decide whether there is something here that Plaintiffs might some day be able to develop that might defeat Fannie Mae's secured

---

[27] *See Dodd Ins. Services, Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1158 (10th Cir. 1991) (noting the "method of pleading plaintiffs employed in the case before us appears to be the type known colloquially as "throw - as - much - mud - against - the - wall - as - you - can - and - hope - some - of - it - sticks."). This kind of pleading did not work with the Circuit, and it does not work with me. Litigants cannot merely throw out "facts" that under some unknown theory might put a dent into the opponent's case or create a material issue of fact. Instead, they need to connect the dots and show how under the facts of <u>this</u> case, those facts are material. This the Williamses have not done, although they have had more than adequate time to conduct whatever discovery they wanted on this issue to be in a position to connect the dots when the time came.

[28] *See Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003) (explaining that a question of fact must be both genuine and material to preclude summary judgment).

status. That issue is not properly before me. Similarly, I decline to decide the issue of whether BAC has the authority to enforce the note in this case, as that issue is not properly before me—and a finding in favor of the Plaintiffs would not result in the relief they are seeking in their Complaint.

## IV. Conclusion

Because I have found that the only claim in Plaintiffs' Complaint fails to state a claim, I will grant summary judgment to the Defendants. Out of an abundance of caution, I will not today enter a Judgment on Decision in the event Plaintiffs desire to assert that 1) they are entitled at this late stage to amend their complaint, 2) such an amendment would not prejudice the Defendants, and 3) such an amendment would not be legally futile. To that end, if they desire to assert that they should be allowed to amend the Complaint to include claims that were first raised in the summary judgment process, they shall serve a copy of their proposed amended complaint on opposing counsel (with a copy to chambers) by **March 12, 2012 at 5:00 pm**. Plaintiffs do not need to file a formal motion to amend by that time, but must at least provide the Defendants and chambers with a copy of any proposed amended complaint.

I will convert the previously scheduled Pretrial Conference into a Status Conference to take up any remaining issues in this case, including whether Plaintiffs should be allowed to amend their Complaint, should they wish to do so in light of the findings and holding in this opinion. That conference will be held on **March 14, 2012 at 2:20 p.m.** If a proposed amended complaint is not timely received, I will construe

13

that as Plaintiffs' decision not to seek to amend, and a Judgment on Decision will be entered granting judgment in favor of the Defendants.

###